# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUANITA MARTINEZ,

        Plaintiff,

vs.                                                   No. CIV 04-0255 JB/RLP

CORNELL CORRECTIONS OF TEXAS,
A DELAWARE CORPORATION,
MANAGEMENT AND TRAINING
CORPORATION, A DELAWARE
CORPORATION, and RUDY ESTRADA,
CODY GRAHAM, and LUIS GALLEGOS,
in their individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel Defendant Management and Training Corporation to Respond to Plaintiff's First Sets of Discovery Requests, filed December 28, 2004 (Doc. 80). The primary issue is whether the Court should compel Defendant Management and Training Corporation ("MTC") to produce communications between it and the County of Santa Fe regarding the sexual misconduct of its employees. Because the Court concludes that such discovery appears reasonably calculated to lead to the discovery of admissible evidence, the Court will grant Plaintiff Juanita Martinez' request that the Court compel MTC to fully respond to Interrogatory No. 12 and to Request for Production No. 2. The Court will also require MTC to pay Martinez her fees and expenses in preparing the portion of her motion that relates to Interrogatory No. 12 and to Request for Production No. 2.

## FACTUAL BACKGROUND

Martinez contends that Defendant Luis Gallegos, a jail guard at the Santa Fe County Adult Detention Center ("SFCADC"), repeatedly raped her between September 2001 and December 2001 while she was incarcerated at the SFCADC.  Martinez alleges that, on various occasions, the rapists included Gallegos, other correctional officers at the SFCADC, and male inmates at the SFCADC whom Gallegos gave access to Martinez.  As a result, Martinez became pregnant while in custody at the SFCADC in December, 2001.

Martinez' version of events has changed many times over the course of time.  Ultimately, Martinez admitted that a male inmate, Francisco Salazar, was the father of the child, a fact which paternity testing has confirmed.

MTC had only operated SFCADC from October 1, 2001.  Martinez was discovered to be pregnant on January 4, 2002, a little over three months after MTC assumed operation of the facility.

Salazar is currently in the custody of the New Mexico Corrections Department.  Martinez has been released from custody and remains on parole.  Their child resides with Salazar's mother.

## PROCEDURAL BACKGROUND

Martinez served first sets of interrogatories and requests for production on MTC on October 27, 2004.  See Certificate of Service for Plaintiff's First Set of Interrogatories to Defendant Management and Training Corporation; Plaintiff's First Set of Requests for Production to Defendant Management and Training Corporation; Certificate of Service, filed October 27, 2004 (Doc. 44). MTC served its objections and responses to these requests on December 3, 2004.  See Defendant Management & Training Corporation's Answers and Objections to the Plaintiff's First Set of Interrogatories (served December 6, 2004); Defendant Management & Training Corporation's

Responses and Objections to the Plaintiff's First Set of Requests for Production (served December 6, 2004); Certificate of Service, filed December 6, 2004 (Doc. 61).

Martinez believed that MTC made evasive and incomplete responses, and interposed vague and baseless objections to several of her discovery requests. Martinez' counsel contacted MTC's counsel in a good faith attempt to resolve the issues that she raises in this motion without the Court's intervention. On December 22, 2004, Martinez' counsel sent a letter to MTC's counsel outlining in detail the alleged inadequacy of several of MTC's discovery responses and asking that MTC supplement its responses accordingly. See Letter from Adam S. Baker to P. Scott Eaton at 1-3 (dated December 22, 2004). MTC's counsel responded to this letter by e-mail. See E-mail from Paula Z. Kahn to Adam Baker at (dated December 27, 2004).

The parties' attempts to resolve their disputes were unsuccessful. After some discussions, the parties were unable to resolve all of the discovery disputes that Martinez' letter raised. See Letter from Adam S. Baker to P. Scott Eaton and Paul Z. Kahn at 1-2 (dated December 27, 2004). Specifically, efforts to resolve Interrogatories 9, 12, and 13, and Requests for Production 2, 4, 12, 16, and 17 were unavailing at the time of counsel's good faith conference. See id.

Martinez moves the Court pursuant to rule 37 of the Federal Rules of Civil Procedure to compel MTC to respond to Martinez' First Sets of Interrogatories and Requests for Production to MTC. Martinez argues that the Court should compel MTC to fully respond to her discovery requests and to require MTC to pay the reasonable costs and attorney's fees that she incurred in bringing this motion.

The parties have resolved some of the discovery issues that Martinez raised in her motion since she filed it on December 28, 2004. Since the time of the pre-motion conference, MTC has

provided additional documents and information to Martinez, which documents and information are subject to her motion. Since Martinez filed her motion, the parties have resolved some of their discovery disputes. In attempting to resolve the discovery disputes, counsel for Martinez and for MTC agreed to certain compromises. The provisions of these documents moot some of the issues that Martinez' motion presents.

Since Martinez filed her Motion to Compel, Gallegos filed a privilege log that purports to identify all of the documents that the Defendants are withholding that may be responsive to Interrogatory No. 9. See Defendant Gallegos' Amended Production Log, filed January 27, 2005 (Doc. 107). The Court's ruling upon its in camera inspection of the documents that Gallegos submitted to the Court has resolved the issue presented in Plaintiff's Motion to Compel with regard to Interrogatory Number 9.[1]

There are, however, still several issues outstanding.

## LAW RELATED TO DISCOVERY

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery is deliberately broad: "The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor, 329 U.S. 495, 501 (1947).

The district court, however, is not "required to permit plaintiff to engage in a 'fishing

---

[1] Neither party is entitled to fees arising from the dispute on Interrogatory 9.

expedition' in the hope of supporting his claim." McGee v. Hayes, 43 Fed. Appx. 214, 217 (10th Cir. July 22, 2002)(unpublished opinion).  See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002)("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.")(quotations omitted); Hardrick v. Legal Services Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests.")(quotation omitted)).  "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995)(quotation omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Electronics Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. 1998)(quoting Piacenti v. Gen. Motors Corp., 173 F.R.D. 221, 223 (N.D.Ill.1997)).  Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." Id.  Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Id. (quotation omitted).

Rule 26, which stated a party may obtain discovery on any matter "relevant to the subject matter," Fed. R. Civ. P. 26(b)(1)(1999), was amended in 2000 to state that the material must be "relevant to the claim or defense of any party," id. (2000).  Under the 2000 amendment, however, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved

in the action." Fed. R. Civ. P. 26(b)(1)(2000). The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2000)(stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained that

> [u]nder the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Id.

Rule 33 requires a party to answer an interrogatory "separately and fully . . . , unless it is objected to, in which event the objecting party . . . shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b)(1). Likewise, rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 33 provides: "All grounds for an objection to an interrogatory shall be stated with specificity." Fed. R. Civ. P. 33(b)(4). "The burden is on the objecting party to show why an interrogatory is improper." 8A C. Wright, Miller & Marcus, Federal Practice & Procedure § 2173, at 291-92.

Rule 37 provides enforcement mechanisms for rules 33 and 34. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P.

37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure

to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). If the Court grants the motion to compel,

> the court shall, after affording an opportunity to be heard, require the party . . . whose
> conduct necessitated the motion or the party or attorney advising such conduct or
> both of them to pay to the moving party the reasonable expenses incurred in making
> the motion, including attorney's fees, unless the court finds that the motion was filed
> without the movant's first making a good faith effort to obtain the disclosure or
> discovery without court action, or that the opposing party's nondisclosure, response,
> or objection was substantially justified, or that other circumstances make an award of
> expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

## ANALYSIS

Some of the discovery issues raised in Martinez' motion remain unresolved. Martinez

contends that MTC's objections are without merit and that its responses are inadequate. MTC

contends that Martinez requests seek broader discovery than the Federal Rules of Civil Procedure

allow and that the unresolved issues present in this case arise from overly broad discovery requests.

All parties believe that a court ruling is necessary to resolve those issues as to the objections that

MTC raised to Martinez' interrogatories and requests. Because the Court cannot say that Martinez'

discovery requests are fishing expeditions seeking documents and information beyond the claims or

defenses, or subject matter of her suit, the Court will grant her motion to compel and, for the reasons

given in this opinion, enter an order compelling MTC to supplement their discovery responses as

stated herein. The Court will also require MTC to pay some of the reasonable costs and fees that

Martinez incurred in bringing this motion.

## I.   MTC'S COMMUNICATIONS WITH THE COUNTY OF SANTA FE REGARDING SEXUAL MISCONDUCT (INTERROGATORY NO. 12 AND REQUEST FOR PRODUCTION NO. 2).

The parties have not resolved their dispute concerning these discovery requests. Interrogatory No. 12 seeks information about communications between MTC and the County of Santa Fe regarding MTC's operations of the SFCADC. See Interrogatory No. 12, at 1. In Request for Production No. 2, Martinez seeks production of all documents of such communications. See Request for Production No. 2, at 1.

In their responses to these discovery requests, MTC refused to provide any responsive information. MTC's answer to Interrogatory No. 12 was accidentally cut off. See Interrogatory No. 12, at 13. Based on conversations with MTC's counsel, Martinez represents that MTC is not providing any substantive information in its answer to this interrogatory other than to state that there were no such communications regarding sexual misconduct at the SFCADC between October 1, 2001 and December 31, 2001.

During negotiations with MTC before filing this motion, Martinez agreed to limit these requests to all communications between MTC and the County of Santa Fe regarding sexual misconduct at the SFCADC. See Letter from Adam S. Baker to P. Scott Eaton at 2 (dated December 27, 2004). Still, MTC refused to provide information about any communications outside of the period between October 1, 2001, and December 31, 2001, because it asserts that any such communications would not be relevant to whether MTC had a policy, custom, or practice of deliberate indifference to detainees' constitutional rights when the acts about which Martinez complains occurred -- between September, 2001 and December, 2001. See id.; Defendant MTC's Amended and Substituted Response to Plaintiff's Motion to Compel Defendant MTC to Respond to Plaintiff's First Sets of Discovery Requests, at 8-9, filed January 18, 2005 (Doc. 103).

These discovery requests seek, among other things, MTC's communications with Santa Fe

-8-

County regarding sexual misconduct before and after the alleged incident giving rise to Martinez' lawsuit.  MTC has agreed to provide communications concerning sexual misconduct during the time period in which Martinez was incarcerated in the SFCADC under MTC's operation and became or was pregnant.  MTC has objected to providing such communications, if there are any, during the time periods: (i) after Martinez left the SFCADC; and (ii) before MTC assumed operational responsibility for SFCADC on October 1, 2001.  MTC contends that such communications are not relevant to the subject matter of this lawsuit or are not reasonably calculated to lead to the discovery of evidence admissible at trial.

MTC's position is that incidents of assault on or other wrongdoing toward detainees after Martinez became pregnant, and certainly after Martinez left SFCADC, cannot be relevant to establish municipal liability in the circumstances of this case.  MTC contends that the practices at SFCADC after January 1, 2002 could not reflect on any de facto policy of MTC, because it had not had operation of the facility for a sufficient period of time for such policies to develop, if there were any such policies.  MTC maintains that incidents of sexual assault that occurred after Martinez' sexual assaults at the SFCADC are not relevant.

The parties did not cite a Tenth Circuit case on point, and the Court did not find one.  Other circuit courts, however, have found that post-incident occurrences of misconduct unrelated to the investigation or discipline resulting from the incident before the court -- i.e., unrelated to the response of the municipal defendant -- are not sufficient to establish municipal liability.  See, e.g., Woo v. City of New York, No. 93CIV7007, 1996 WL 457337, at *6 (S.D.N.Y.1996)(quoting Sango v. City of New York, No. 83 CV5177, 1989 WL 86995, at *20 n.2 (E.D.N.Y.)).  In Sango v. City of New York, the district court said that "conduct occurring after the incident at issue lacks the requisite

'affirmative link' to plaintiffs' injuries--that is, plaintiffs cannot establish causation." The court also noted, however, that "[e]vidence of a municipal policymakers' response to misconduct can be helpful in determining the municipal policy existing before the incident, . . . but it cannot alone serve as the predicate for municipal liability." <u>Sango v. City of New York</u>, 989 WL 86995 at *20 n.2.

The Court will overrule MTC's objections on two bases. First, communications made between MTC and the County of Santa Fe regarding sexual misconduct at the SFCADC after December 31, 2001, may refer or relate to events that occurred before or during Martinez' detention at the SFCADC. These events, in turn, may be relevant to Martinez' allegation that MTC knew of and was consciously indifferent to female detainees' rights to be free from sexual assault by SFCADC employees.

Second, incidents of sexual assault of detainees by SFCADC employees that occurred after December 31, 2001, may also be relevant to the existence of MTC's policy, custom, or practice. Subsequent acts or conduct may be admissible to establish municipal liability in actions brought pursuant to 42 U.S.C. § 1983. <u>See</u> <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1166-67 (1st Cir. 1989), <u>cert.</u> <u>denied</u>, 493 U.S. 820 (1989); <u>Grandstaff v. City of Borger, Tex.</u>, 767 F.2d 161, 171 (5th Cir. 1985), <u>cert.</u> <u>denied</u>, 480 U.S. 916 (1987). It is true that these cases are not point. Neither case addresses the discoverability of other incidents that occurred after the incident at issue in the lawsuit. Rather, both address the admissibility of post-incident actions related to the actions taken or not taken by management with regard to the incident at issue in the suit.

In <u>Grandstaff v. City of Borger, Tex.</u>, the United States Court of Appeals for the Fifth Circuit stated:

The disposition of the policymaker may be inferred from his conduct after the events

of that night.  Following this incompetent and catastrophic performance, there were
no reprimands, no discharges, and no admissions of error.  The officers testified at the
trial that no changes had been made in their policies.  If that episode of such
dangerous recklessness obtained so little attention and action by the City policymaker,
the jury was entitled to conclude that it was accepted as the way things are done and
have been done in the City of Borger.

767 F.2d at 171.  In Bordanoaro v. McLeod, the United States Court of Appeals for the First Circuit

affirmed the district court's admission of "post-event evidence of the lack of proper internal

investigation of the attack and the failure take strong disciplinary action against the officers involved."

871 F.2d at 1166-67.  As the First Circuit explained: "Post-event evidence can shed some light on

what policies existed in the city on the date of an alleged deprivation of constitutional right."  These

rulings are not the same as allowing discovery of evidence of other incidents unrelated to the incident

at issue in the suit.

It is true that these cases are not binding on the Court.  See Hill v. Kansas Gas Service Co.,

323 F.3d 858, 869 (10th Cir. 2003)(noting that opinions that other circuits hand down do not bind

the Tenth Circuit).  The Court may allow discovery and yet not ultimately admit the discovered

evidence.  This motion is not, however, the place or time to make evidentiary rulings for the trial.

It is sufficient that the Court find that this evidence "appears reasonably calculated to lead to the

discovery of admissible evidence."  The Court may ultimately decide not to admit the evidence, but

the Court cannot say that is the case now.

The requested evidence is discoverable.  Martinez has shown entitlement to discovery of

incidents of misconduct, if any, by other officers after the incident that Martinez alleges.  The Court

will therefore compel MTC to respond to these requests.  Specifically, the Court will compel MTC

to provide all information and documents in its possession, custody, or control evincing

communications between MTC and the County of Santa Fe regarding any sexual misconduct at the
SFCADC.

Martinez' motion to compel full responses to Interrogatory No. 12 and to Request for
Production No. 2 is granted.  The Court will also grant Martinez fees and expenses in bringing the
motion to secure this ruling.

II.   **MTC'S COMMUNICATIONS REGARDING SFCADC'S OPERATION WITH THE
      UNITED STATES DEPARTMENT OF JUSTICE (INTERROGATORY NO. 13 AND
      REQUEST FOR PRODUCTION NO. 4).**

This Interrogatory and Request for Production seek communications between MTC and the
Department of Justice.  Specifically, Interrogatory No. 13 seeks information about communications
between MTC and the United States Department of Justice ("DOJ") regarding MTC's operation of
the SFCADC.  See Interrogatory No. 13, at 1.  In Request for Production No. 4, Martinez seeks
production of all documents of such communications.  See Request for Production No. 4, at 1.

In its response to these discovery requests, MTC offered to produce "any written
correspondence between the DOJ and the [SFCADC], if any exists, for the time-frame at issue in this
suit of October 1, 2004 [sic] through December 31, 2004."  See Answer to Interrogatory No. 13, at
1.  After conferring with MTC and not securing resolution of this issue, Martinez filed this motion
to compel.  In her memorandum supporting that motion, Martinez argued that evidence of
communications between MTC and the DOJ were discoverable because the SFACDC was the subject
of an investigation by the DOJ in 2002, during MTC's operation of the facility.  As a result, the DOJ
issued a scathing report about the SFCADC in March, 2003.  See Report to Jack Sullivan, County
Commission Chairman, from Ralph F. Boyd, Jr., Assistant Attorney General (dated March 6, 2003).

For example, the DOJ expressed concerns about "circumstances for women housed at the

Detention Center." Id. at 25.  They received "anecdotal evidence of sexual relationships between staff and inmates under the previous management [i.e., Defendants Cornell Corrections and Estrada], as well as one incident in which male inmates were allowed into the female housing area for several hours." Id.  The DOJ noted that, "[u]nder the new management [i.e., Defendants MTC and Graham] one inmate became pregnant . . . ."  Id.  This last passage may refer to Martinez' pregnancy. Significantly, the DOJ found that the reporting and investigation of these incidents were flawed.  See id.

In another report, from February, 2003, the DOJ describes how "the jail lacks gender specific training necessary to ensure the safety and protection of women," Evaluation of the Santa Fe County Correctional Facility, at 18 (dated February 19, 2003), and "[t]he facility's staffing lacked adequate same-sex supervision to provide for reasonable privacy of the female population." id. at 20.

In her memorandum in support of the motion to compel, Martinez noted that, based on these highly relevant findings, MTC had not produced any documents or other responsive information to these requests.  After Martinez filed her motion, the parties resolved the issues related to these requests.  MTC represents that it has provided to Martinez' counsel copies of all documents it has which are responsive to Request for Production No. 4, which include a letter dated March 6, 2003, to Jack Sullivan, along with its attachments, and MTC's response to the Department of Justice. MTC further represents that it has produced all of the responsive documents in its possession, custody, or control, and has no other documents responsive to this request in its possession, custody, or control. MTC represents that the documents responsive to Request for Production No. 4 also answer Interrogatory No. 13.  Thus, the Court understands that no issue exist with respect to the discovery responsive to Interrogatory No. 13 or to Request for Production No. 4.

-13-

MTC does not explain, however, why it withheld these documents.  The Court does not think MTC's failure to turn this information over before a motion was filed was justified.  If MTC had opposed the motion after it was filed, the Court likely would have compelled it to respond to these discovery requests by disclosing all information and documents in its possession, custody, or control evincing communications between MTC and the DOJ regarding the SFCADC.

The Court will therefore award Martinez her reasonable attorneys' fees and costs for having to file a motion to compel this discoverable information.  Martinez will not, however, be entitled to any fees or costs incurred with regard to this discovery after the date she filed her motion.

## III.   GRAHAM'S PERSONNEL FILE (REQUEST FOR PRODUCTION NO. 12).

This request for production seeks Cody Graham's personnel file.  Specifically, Request for Production No. 12 seeks production of "a complete copy of all documents regarding Cody Graham's employment with MTC, including but not limited to his personnel file, training records, and records of any misconduct he allegedly committed in the course of his employment and any investigations thereof."  Request for Production No. 12, at 1.  MTC did not produce any documents in response to this request.  See Response to Request for Production No. 12, at 1.

After conferring with Martinez' counsel, but before Martinez filed her motion, MTC's counsel agreed to produce portions of Graham's personnel file subject to a confidentiality order while withholding other portions for which it agreed to produce a privilege log.  In its memorandum in support of its motion to compel, Martinez represented that, if this production is satisfactory, she would withdraw the portion of her motion pertaining to Graham's personnel file.

MTC has produced a copy of Graham's personnel file to Martinez' satisfaction.  MTC agreed to do so after a mutually satisfactory Confidentiality Agreement was executed.  MTC did not withheld

-14-

documents from Graham's personnel file. MTC redacted all personal identifying information of Graham, his wife, and children, such as dates of birth, addresses, social security numbers, telephone numbers, fingerprints, etc., to protect Graham's and his family's privacy and security. Martinez' counsel agrees to such redactions. Thus, it is the Court's understanding that no issues exist with respect to the discovery or production of Graham's personnel file.

The Court will not award Martinez any fees or expenses that she incurred in bringing her motion regarding Request for Production No. 12.

## IV.   ACCUSATIONS OF SEXUAL MISCONDUCT BY MTC'S EMPLOYEES SFCADC (REQUEST FOR PRODUCTION NO. 16).

Request for Production No. 16 seeks production of all documents in MTC's possession, custody, or control "which mentions or refers to incidents or allegations of sexual misconduct by employees of MTC at [SFCADC], including but not limited to inmate grievances, investigations into such purported misconduct, police reports, and documents prepared by any governmental agencies, departments or representatives." Request for Production No. 16, at 1. With this request, Martinez seeks discovery of documents containing accusations of sexual misconduct by MTC employees at SFCADC, unrestricted by any time-frame relevant to her claims. Moreover, and perhaps most important, this Request seeks information concerning all MTC employees at the SFCADC.

In its response, MTC stated that it does not have any documents in "its possession, custody, or control for the time period at issue in this lawsuit of October 1, 2001 to December 31, 2001, that mention or refer to incidents or allegations of sexual misconduct by employees of MTC at the [SFCADC]." Response to Request for Production No. 16, at 1. MTC thus agreed to produce any such information related to the time-frame relevant to Martinez' claims, but has objected to providing

-15-

information that is not related either in time or by conduct similar to Martinez' complaint. Specifically, MTC objects to discovery of unrelated, post-incident accusations, because it contends such accusations as are not relevant to the subject matter of this suit and are not reasonably calculated to lead to the discovery of evidence admissible at the trial.

MTC argues that the Court should not allow the discovery for all the same reasons set out in its response regarding Interrogatory No. 12 and Request for Production No. 2.  Again, based upon Woo v. City of New York, MTC contends that post-incident events that are not directly related to the event at issue cannot reflect backward in time to establish a policy or practice in existence at the time of the alleged event.  MTC contends that the discovery that this Request for Production seeks, outside the time-frame of Martinez' incarceration in SFCADC, does not relate to the subject matter of the pending suit.  See Fed. R. Civ. P. 26.  In Woo v. City of New York, however, the court granted summary judgment on the plaintiff's § 1983 claim, holding that subsequent incidents are not sufficient to establish causation.  1996 WL 457337, at *6-7.  This case, however, is only in the discovery stage of proceedings, and the Court cannot reasonably say that discovery of such information would not lead to admissible evidence.

For the reasons that the Court has already stated, some of the information sought in this Request may be relevant to MTC's policy, custom, or practice in its operation of the SFCADC without regard to the limited time-frame that MTC has imposed.  There is a reasonable argument that subsequent acts or conduct may be admissible to establish municipal liability; the Court need not, however, determine that evidentiary issue at this time.  Moreover, employee to employee claims of sexual harassment or other gender-related misconduct, which are within the request, may have a possible relationship to Martinez' allegation that a corrections officer raped her.

-16-

On the other hand, the net that Martinez' request casts is too wide. If there was evidence, for example, of a claim by a secretary of being subjected to jokes with sexual content, such evidence would not have much, if any, bearing, or provide the possibility of leading to the discovery of admissible evidence, regarding Martinez' allegations.

Accordingly, documents regarding incidents or allegations of physical sexual misconduct by employees at the SFCADC other than those that occurred between October 1, 2001 and December 31, 2001, are discoverable. MTC restricted its response to only some MTC employees and to only a specified time period. Those objections are overruled.

MTC's position was not on entirely good grounds. MTC should respond further. The Court will compel MTC to further respond to this request. Accordingly, Martinez' request to compel regarding Request for Production No. 16 is granted in part. The Court will compel MTC to produce all documents responsive to Request for Production Number 16 that involve physical misconduct or actual threat of physical misconduct without regard to the time-frame set forth in MTC's response.

The Court will award Martinez one-half of the fees and costs she incurred in litigating the motion to compel regarding Request for Production No. 16.

## V.     MARTINEZ' INMATE FILE (REQUEST FOR PRODUCTION NO. 17).

This request for production, Request No. 17, seeks a copy of Juanita Martinez' inmate file regarding her detention at the SFCADC. See Request for Production No. 17, at 1. MTC responded by stating that "[t]he inmate file or files maintained on Plaintiff are the property of Santa Fe County and, therefore, cannot be produced by MTC." Response to Request for Production No. 17, at 1. See E-Mail from Paula Z. Kahn to Adam Baker, at 2 ("It is defendant's understanding that it cannot turn over the property of Santa Fe County."). After Martinez filed her motion to compel, however, MTC

produced a copy of Martinez' inmate file from her detention at the SFCADC.

MTC represents that it could not originally agree to produce to produce this file, as it is Santa Fe County's property.  MTC has, after consultation with the County, received authorization to provide a copy of the inmate file, except for any health-care related information, to Martinez' counsel. MTC has provided that file.  Upon receipt of an executed HIPPA-complaint release, MTC agrees to also provide the health-care related documents in Martinez' file.  Thus, it is the Court's understanding that no issues exist with respect to the discovery or production of Martinez' inmate file.

Martinez argues that MTC's objection that it could not produce the County's property was wholly without merit and that, in its Response, MTC does not explain why it withheld these documents.  Without deciding whether MTC's position, as stated before Martinez filed her motion, is correct, the Court cannot say it is without justification.  The Court will thus not award Martinez her reasonable attorneys' fees and costs for having to file a motion to compel this discoverable information.

**IT IS ORDERED** that the Plaintiff's Motion to Compel Defendant Management Training Corporation is granted in part, denied in part, and dismissed in part as moot.  Defendant Management Training Corporation is compelled to fully respond, and to provide complete additional responsive information, to Plaintiff's Interrogatory Nos. 12 and to Requests for Production No. 2, in her first sets of discovery requests to MTC.  As to Request for Production No. 16, MTC shall disclose all documents responsive to Request for Production Number 16 that involve physical misconduct or actual threat of physical misconduct without regard to the time-frame set forth in MTC's response. All other requests for information are dismissed as moot.  The Plaintiff is awarded her reasonable costs and attorney's fees in bringing this motion on Interrogatory No. 12, and on Request for

Production 2.  She is awarded one-half of her fees and expenses in prosecuting the motion to compel

on Request for Production 16.  As to Request for Interrogatory 13 and Production No. 4, the Plaintiff

is entitled to only fees and costs incurred in filing the motion, and nothing incurred after that date.

 The Court otherwise denies the Plaintiff's requests for fees and costs.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Paul J. Kennedy
Mary Y.C. Han
Adam S. Baker
Kennedy & Han, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

P. Scott Eaton
Eaton Law Office, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Management Training Corporation
       and Cody Graham*

Patrick D. Allen
Yenson, Lynn, Allen & Wosick, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants Cornell Correction of Texas Inc. and
       Rudy Estrada*

Norman F. Weiss
Alisa R. Wigley
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Luis Gallegos*

-19-